# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:17-cr-00173-1 |
| ) | CHIEF JUDGE CRENSHAW |
| GARY LYNN UTLEY, JR., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Gary Lynn Utley, Jr., was sitting in a chair at 2019-C South Main Street, Springfield, Tennessee, when the Springfield Police Department served a warrant to search the house on that property and detained Utley. During his detention, Utley voluntarily said to police that he had "a gun in my pants and a little bit of dope." (Doc. No. 22-2 at 6.) Police then searched Utley, found the gun and drugs, and took him into custody. (Id.) The Government defends his detention because the warrant to search the house authorized the search of "all persons" on the property. Utley now moves to suppress the drugs and gun obtained during his detention as well as his statements. (Doc. No. 22, 24.) He argues that detaining him based on the "all persons" language in the warrant violates his Fourth Amendment rights. The Court agrees. However, the decision of the Supreme Court in Bailey v. United States, 568 U.S. 186 (2013) that applied its decision in Michigan v. Summers, 452 U.S. 682 (1981), allowed the Springfield Police to detain Utley within the "immediate vicinity of the premises to be searched" without any offense to the Fourth Amendment. Utley's detention pursuant to the search warrant was proper and his motion to suppress is denied.

I. The Search Warrant Did Not Create Probable Cause

The Court's review for probable cause is limited to the four corners of the affidavit. United States v. Berry, 565 F.3d 332, 338 (6th Cir. 2009). Here, the facts in the Affidavit supporting the search warrant are accepted as true to determine whether there is probable cause. United States v. Brown, 828 F.3d 375, 380-81 (6th Cir. 2016). The Magistrate's probable cause determination is given "great deference," and the defendant has the burden to prove that the probable cause determination was in error. United States v. Allen, 211 F.3d 970, 973 (6th Cir. 2000). The parties agree that no evidentiary hearing is necessary. (Doc. No. 33.)

A. THE AFFIDAVIT

On September 22, 2016, Detective Houston Evans applied for a search warrant from the Robertson County, Tennessee, General Sessions Court. (Doc. No. 22-1 at 4.) In his Affidavit dated September 22, 2016 ("Affidavit"), he swore that evidence of a drug crime was located at 2019 South Main Street, Lot C, Springfield, Tennessee, 37172, in the possession of Leslie Pope and Regina Guerrero. (Id.)

Specifically, at 2019 South Main Street, Lot C, Evans stated that "multiple" Informants had made multiple controlled purchases of controlled substances over the past couple of months under the direction of the Springfield Police Department. (Id. at 5.) Evans explained that multiple confidential informants ("Informants") observed Pope and Guerrero in possession of controlled substances in quantities consistent with resale. He then averred that within the past 72 hours only a single Informant observed Pope and Guerrero selling controlled substances and that Informant also engaged Pope and Guerrero to make one or two controlled purchases of controlled substances. (Id. at 5-6.)

Based on this information the General Sessions Judge issued a search warrant dated September 27, 2016, for 2019 South Main Street, Lot C, Springfield, Tennessee, 37172. (Doc. No. 22-1 at 2.) The Warrant stated that the "search is to include <u>all persons</u>, outbuildings, outhouses and storage buildings, and all vehicles found thereon, for the aforesaid evidence." (<u>Id.</u> at 3 (emphasis added)). Detective Evans executed the Warrant on September 27, 2016, at 5:15 p.m.

B. ANALYSIS

Legal review of whether the "all persons" clause in the search warrant justifies detention of Utley begins with the Fourth Amendment. The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures . . . and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." To show probable cause, the officer submitting the oath or affirmation in support of the warrant must show "facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." <u>United States v. Crumption</u>, 824 F.3d 593, 615 (6th Cir. 2016). The affidavit must adequately describe a "nexus between the place to be searched and the evidence sought." <u>United States v. Carpenter</u>, 360 F.3d 591, 594 (6th Cir. 2004).

The Fourth Amendment's requirement that the warrant "particularly" describe "the place to be searched, and the people or things to be seized" requires that the warrant itself contains such particularity. <u>Groh v. Ramirez</u>, 540 U.S. 551, 557 (2004). The particularity requirement "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." <u>Id.</u> at 561 (quoting <u>United States v. Chadwick</u>, 433 U.S. 1, 9 (1977)). "The cases on particularity are actually concerned with at least

two rather different problems: one is whether the warrant supplies enough information to guide and control the agent's judgment in selecting what to take; and the other is whether the category as specified is too broad in the sense that it includes items that should not be seized." United States v. Richards, 659 F.3d 527, 537 (6th Cir. 2011) (quoting United States v. Upham, 168 F.3d 532, 535 (1st Cir. 1999)).

With this backdrop, courts have taken two approaches to "all persons" clauses in search warrants. The minority view (the "Georgia approach") was set forth by the Georgia Court of Appeals. State v. Cochran, 217 S.E.2d 181, 183 (Ga. Ct. App. 1975). In Cochran, police obtained a warrant to search for "illegal drugs and narcotics" in "automobiles, on persons and in two buildings located on the premises and curtilage . . . known as the Sunshine Club." Id. at 182. Police stopped a car leaving the club, searched a passenger of the car, and found an illegal drug. Id. Affirming the trial court's suppression of the evidence, the Court of Appeals stated that the warrant was a "general warrant" as applied to Cochran, violating the particularity requirement of the Fourth Amendment, because "he was neither listed by name specifically nor described generally, and no additional indicia of probable cause were provided at the scene of the search." Id. at 183 (citing Willis v. State, 177 S.E.2d 487 (Ga. Ct. App. 1970) (describing a warrant that authorizes the search of "all persons" as a void general warrant)). At least three other state courts have followed this approach. Johantgen v. Commonwealth, 571 S.W.2d 110, 112 (Ky. Ct. App. 1978) (holding that a warrant that allowed search of "any other person believed to be involved in the illegal use of, possession of, or trafficking in controlled substances" at a residence is an unconstitutional general warrant); Peavy v. State, 336 So.2d 199, 202 (Ala. Ct. Crim. App. 1976) (holding that a warrant allowing the search of "each and every person in or near said mobile home" where controlled narcotics were being sold was an unconstitutional general warrant); Crossland v. State, 266 P.2d

649, 651-52 (Ok. Crim. Ct. App. 1954) (holding that a warrant allowing the search of "each and every person" at a house constitutes an unconstitutional general warrant).

The majority approach (the "New Jersey approach") does not view the constitutional issue raised by an "all persons" clause in a warrant as a particularity issue, but rather an issue of probable cause. State v. De Simone, 288 A.2d 849, 852-53 (N.J. 1972). The New Jersey Supreme Court analyzed a warrant to search an automobile, and allowing "all persons found therein" to be searched as well. Id. at 850. The defendant, a passenger in the car, was searched and police found illegal lottery slips on his person. Id. The court held that "the sufficiency of a warrant to search persons identified only by their presence at a specified place should depend on the facts." Id. It continued:

> A showing that lottery slips are sold in a department store or in an industrial plant obviously would not justify a warrant to search every person on the premises, for there would be no probable cause to believe that everyone there was participating in the illegal operation. On the other hand, a showing that a dice game is operated in a manhole or in a barn should suffice, for the reason that the place is so limited and the illegal operation so overt that it is likely that everyone present is a party to the offense. Such a setting furnishes not only probable cause but also a designation of the persons to be searched which functionally is as precise as a dimensional portrait of them.

Id. The affidavit stated that an illegal gambling operation was operating out of six automobiles, and officers found the six automobiles, and the defendant was inside one of the automobiles. Id. at 851. There was sufficient particularity to conclude that everyone in those six automobiles would be participating in the illegal gambling operation. Id. at 852.

Multiple state jurisdictions have followed the New Jersey approach. See People v. Johnson, 805 P.2d 1156, 1160 (Co. Ct. App. 1990) (search upheld based on an eight-page affidavit showing particular facts that everybody going to a residence was involved in the delivery, cooking, or buying of illegal narcotics) (collecting cases). The common thread in

5

these cases is allegations that everyone at a location is involved in the illegal activity. For example, in Commonwealth v. Smith, 348 N.E.2d 101 (Mass. 1976), the Massachusetts Supreme Court, in denying a motion to suppress when there was constant traffic of heroin buyers coming into a residence, found that it is only in "special circumstances such as those shown in the affidavit here will a search warrant aimed principally at the premises also be held to include validly the search of any person present." 348 N.E. 2d at 103. The Minnesota Supreme Court upheld a nighttime search for illegal liquor of a house that was used as an after-hours bar, finding that there "was little likelihood that anyone would be in the house but to participate in the after [ ] hours revelry." State v. Hinkel, 365 N.W.2d 774, 776 (Minn. 1985).

After reviewing the state cases, as well as United States v. Guadarrama, 128 F. Supp. 2d 1202, 1206-14 (E.D. Wis. 2001), which analyzed more than thirty-five state cases following the New Jersey approach, the Fourth Circuit adopted the New Jersey approach. Owens ex rel. Owens v. Lott, 372 F.3d 267, 276 (4th Cir. 2004). In Owens, an overnight guest of a private residence informed police that "a black male in his late teens or early twenties" was selling drugs out of that residence. Id. at 271. Police obtained a warrant to search the house, including "all persons at the premise[s]." Id. When officers arrived at the house, they searched the two adult females in the house along with the two minor children. Id. They later searched the two adult females' mother and her fiancé, who owned the house, when they arrived at the property. Id. at 271-72.

The Fourth Circuit found the search unconstitutional, holding that an "'all persons' warrant can pass constitutional muster if the affidavit and information provided to the magistrate supply enough detailed information to establish probable cause to believe that

6

all persons on the premises at the time of the search are involved in the criminal activity." Id. at 276. The court rejected the assertion that the officer's "experience in drug enforcement" was enough to justify an "all persons" clause in a warrant because it is not sufficiently "particularized information that would have permitted the magistrate to reasonably conclude that there was a fair probability that any person seen by officers on the premises was there to partake in one side of a drug transaction or another." Id. This approach has been followed by the Ninth Circuit, Marks v. Clarke, 102 F.3d 1012 (9th Cir. 1996); Third Circuit, Baker v. Monroe Township, 50 F.3d 1186, 1188 n.1 (3d Cir. 1995); Eighth Circuit, United States v. Peep, 490 F.2d 903, 906 (8th Cir. 1974); and Tenth Circuit, United States v. Shields, 172 F.3d 880, at *2-3 (10th Cir. 1999) (table).

Here, applying the Georgia or New Jersey approach, the Affidavit contained *no* indicia of probable cause or particularity of facts that everyone at 2019 South Main Street, Lot C, was participating in drug activities. The three factual grounds for probable cause— (1) observing Pope and Guerrero in possession of controlled substance in quantities consistent with resale; (2) observing Pope and Guerrero selling controlled substances; and (3) engaging Pope and Guerrero to make a controlled purchase of controlled substances— do not in any way advance the conclusion that all persons in the residence or on the grounds of the residence are engaged in illegal activity. Presumably Pope and Guerrero were selling "large amounts of schedule II controlled substances" to someone, as stated in the second sentence of the second paragraph in the Statement of Facts in Support of Probable Cause section of the Affidavit, but that still does not show that everyone at the residence are coming and going to the residence to purchase drugs. (Doc. No. 22-1 at 5.) There is no discussion of anyone on the premises other than Pope, Guerrero, and the Informants.

Giving "great deference" to the General Sessions Judge's determination that there are particular facts to find that probable cause existed. The search warrant here does not conform to the constitutional standards to uphold the detention and search of Utley based on the "all persons" clause.

    II.    Whether the Search is Justified under <u>Summers</u> and <u>Bailey</u>

The Government alternatively argues that the officers had authority to detain him under <u>Summers</u>. The Government has the burden to prove that the warrantless detention of Utley was appropriate. <u>United States v. Matlock</u>, 415 U.S. 164 n.14 (1974); <u>United States v. Herndon</u>, 501 F.3d 683, 692 (6th Cir. 2007). Adhering to precedent established in <u>Summers</u> and <u>Bailey</u>, the detention of Utley was proper.

In <u>Summers</u>, police obtained a search warrant for a house and, in executing the search warrant, they encountered the resident on the porch, detained him, and eventually arrested him after finding narcotics in his basement. 452 U.S. at 693. The Supreme Court upheld the detention of the resident because police had a warrant to search his house. The Court gave great weight to the police interest in preventing flight if evidence of a crime is found and the "interest in minimizing the risk of harm to the officers." <u>Id.</u> at 701-02. "The connection of an occupant to that home gives the police an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of an occupant." <u>Id.</u> at 702.

Utley argues that <u>Summers</u> does not apply to him because he was not an occupant of the house. (Doc. No. 35 at 1.) However, Utley conflates the term "occupant" with "resident." The Sixth Circuit has held that an "occupant" of a home is anybody who is on the premises. <u>United States v. Fountain</u>, 2 F.3d 656, 663 (6th Cir. 1993), overruled on other grounds by <u>Trepel v. Roadway Express, Inc.</u>, 194 F.3d 708, 717 (6th Cir. 1993). This includes nonresidents outside the

residence. United States v. Bohannon, 225 F.3d 615 (6th Cir. 2000). In Bohannon, the defendant drove up to a house while officers were inside executing a valid search warrant and started walking toward the residence. Id. at 616. Officers detained the defendant, searched him, and found methamphetamine. Id. The Sixth Circuit held that "although Summers itself only pertains to a resident of the house under search, it follows that police may stop people coming to or going from the house if police need to ascertain whether they live there. Id. at 617 (quoting Baker v. Monroe Twp., 50 F.3d 1186, 1192 (3d Cir. 1995). Therefore, nonresidents outside a residence may be detained when the officers are executing a valid search warrant.

Bailey limited the scope of where officers may detain people outside a residence during the execution of a search warrant. In Bailey, police obtained a search warrant for a residence and began surveillance on the house. 568 U.S. at 190. After two people from inside the house drove away, two detectives tailed the car and stopped it about a mile away. Id. The Supreme Court, in reversing the Second Circuit, held that Summers did not justify detaining occupants outside the immediate vicinity of the house. Id. at 201. It recognized that Summers allows the detention of occupants "even absent individualized suspicion." Bailey, 568 U.S. at 200. In order to prevent abuses by law enforcement, however, it constrained this exception to the "immediate vicinity of the premises to be searched." Id. at 201. The Court reasoned that when the detention occurs away from a person's house, it is more "intrusive" than when he is detained near the house. Id. at 200. It found that the law enforcement interests discussed in Summers justified the "categorical authority to detain incident to the execution of a search warrant [so long as it is] limited to the immediate vicinity of the premises to be searched." Id. at 199.

Here, According to Officer Eddy Stewart, when Detectives arrived to search the residence, he observed Utley sitting in a chair on the property. (Doc. No. 22-2 at 6.) He believed there were

9

two active capiases for Utley's arrest and Utley appeared to be preparing to leave the area, so Stewart told Utley to sit down. (Id.) Stewart left and Detective Brett Keck stood with Utley. (Id.) While Keck was standing with Utley, Utley stated, "I have a gun in my pants and a little bit of dope." (Id.) Keck then searched Utley and found a fully loaded black revolver, a clear baggie of a white powder or rock-like substance that field-tested positive for cocaine, a digital scale, and $701.00. (Id.) Utley was charged with (1) possession of a Schedule II controlled substance; (2) felon in possession of a firearm; (3) possession of a firearm during the commission of a dangerous felony; and (4) possession of drug paraphernalia. (Id.)

Utley was detained within the "immediate vicinity of the premises to be searched." Officers properly detained him under Summers and Bailey, even though he was not a resident, pursuant to Fountain and Bohannon. Utley then offered, without prompting, that he had a gun and drugs on his person. See Rhode Island v. Innis, 446 U.S. 291, 299-300 (1980) (finding voluntarily inculpatory statements admissible). This gave officers reasonable suspicion to search Utley under Terry v. Ohio, 392 U.S. 1, 30 (1968), the result of which they found a gun and drugs. Utley's motion to suppress the drugs, gun, and his statements must be denied.

The Court will enter an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE